United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   KENNETH NONG,

12                 Plaintiff,              No C 04-2312 VRW

13          v

14   JO ANNE B BARNHART, Commissioner          ORDER
     of Social Security,
15

16                 Defendant.

17   _____/

18

19

20          Plaintiff Kenneth Nong appeals from the decision of the

21   Social Security Administration (SSA) denying his application for

22   social security income (SSI) under title XVI of the Social Security

23   Act (Act).  The court has jurisdiction over the appeal pursuant to

24   42 USC § 405(g).  The court now considers cross-motions for summary

25   judgment.  For the reasons stated herein, the court DENIES

26   plaintiff's motion and GRANTS defendant's motion.

27   \\

28   \\

**United States District Court**

For the Northern District of California

**I**

1

2      Plaintiff was born on March 8, 1954, attended school

3  through the sixth grade in Vietnam, immigrated to the United States

4  in 1981 and performed no substantial gainful activity after that

5  date.  He became a United States citizen in 1990.  Plaintiff

6  testified to speaking Haga, a Chinese dialect, and reading Chinese

7  and Vietnamese.  Administrative Record, Doc # 15 (AR) 43, 50, 55,

8  172-173, 175.

9      Medical records dating from before and during the

10  pendency of plaintiff's disability application establish that

11  plaintiff underwent several medical tests, all of which were

12  essentially normal.  A barium enema study dated March 30, 2001 was

13  "unremarkable."  An abdominal sonogram dated January 7, 2002 for

14  "right epigastric pain" was "unremarkable."  AR 97.  A "biphasic

15  upper DI series and scout abdomen" study (more commonly known as a

16  barium swallow test) performed on May 31, 2002 revealed "normal

17  findings."  AR 100.  Blood tests of the same date were negative for

18  hepatitis A, B and C but revealed the presence of helicobacter, AR

19  101, which was treated with medication, AR 114.  A separate blood

20  panel revealed high levels of cholesterol, triglyceride and LDL.

21  AR 108.  A spine x-ray dated July 20, 2002 revealed "no acute

22  abnormalities."  AR 97.

23      On July 23, 2002, plaintiff applied for SSI benefits

24  alleging an onset date of January 1, 1995.  AR 43.  His application

25  listed "depress [sic], lost memories, headaches, dizzyness [sic],

26  nightmare, back pain" as limiting his ability to work.  AR 49.

27      A letter dated August 14, 2002 to the Department of

28  Social Services by plaintiff's treating physician Patrick Wong

2

United States District Court

For the Northern District of California

1   assessed plaintiff as follows:

2           Mr Kenneth Nong has seen me on and off on several
            occasions since January this year.  His problem is
3           fatty liver and spastic colon syndrome.  Recently,
            he was found to have H pylori gastritis and I have
4           given him treatment with triple therapy.  For my
            stand point, I could not find any reason for his
5           disability.

6   AR 114.

7           Plaintiff underwent an agency-ordered internal medicine

8   evaluation with William Steinsmith, MD at Bay View Medical Clinic.

9   A November 6, 2002 report from that evaluation relates that

10  plaintiff appeared with a professional translator.  Findings for

11  all physiological systems were normal except for "History x 20-plus

12  years of moderate, stable, and uncomplicated chronic low back

13  syndrome, with moderate symptomatic/functional findings on * * *

14  exam, as noted."  AR 119.  The report also noted "frequent tension

15  cephalgias and * * * episodic nonspecific light-headedness,"

16  presumably based on plaintiff's report of symptoms.  AR 117.  An

17  accompanying radiology report from the Bay View Medical Clinic

18  found "disc narrowing at L5-S1" with "marginal anterior

19  hypertrophic spurring and minimal posterior hypertrophic lipping"

20  and "diffused minimal hypertrophic marginal lipping changes

21  throughout the lumbar spine."  AR 115.

22          Dr Steinsmith's report concluded that plaintiff could

23          bear weight for four to six hours per day with
            suitable interval breaks * * * occasionally bend
24          and kneel and grasp and elevate floor-level
            weights of 25 pounds but may experience difficulty
25          performing activities requiring frequent bending,
            kneeling or lifting or performing activities
26          requiring full brisk mobilities of the trunk on
            the lumbopelvic axis * * * periodically ascend or
27          descend a flight of stairs and [] ambulate over
            several city blocks * * * safely commute via
28          public transportation * * * sit in a chair for

3

**United States District Court**
For the Northern District of California

1
2
3

> intervals of 30 minutes, alternating with brief
> intervals of altered body posture for relief of
> posturally exacerbated low back discomfort * * *
> [and] perform table-top manual or clerical tasks
> while retaining the seated position.

4 AR 119.

5        Plaintiff also underwent an agency-ordered psychiatric

6 exam at the Bay View Medical Clinic with Michael Dietrick, MD.  The

7 November 8, 2002 report from the exam made note of plaintiff's

8 reported "headaches and back pain," but concluded that plaintiff

9 had "no psychiatric problems" and had a GAF of 85, well above the

10 range associated with disabling mental health problems.  The report

11 assessed plaintiff's functional capacity thus:  "Plaintiff is able

12 to follow brief three part instructions immediately and repeats

13 them from memory in three minutes.  He denies any problems in

14 object relations.  He relates well to the interviewer and his

15 interpreter.  His attention span is good and he has no difficulty

16 concentrating.  He tolerates stress well and appears to be very

17 adaptable."  AR 120-22.

18        A Physical Residual Functional Capacity Assessment dated

19 December 16, 2002 by internal medicine physician John Chokatos found

20 no significant postural or exertional limitations.  AR 131-39.

21        A blood panel from June 26, 2003 showed elevated levels of

22 cholesterol, triglyceride and LDL, but at levels closer to normal

23 ranges than the previous blood panel.  AR 158.  A July 1, 2003

24 barium enema was "unremarkable."  AR 157. A colonoscopy conducted

25 August 12, 2003 prompted by abdominal pain, diarrhea and

26 intermittent rectal bleeding was normal except for diagnosis of

27 spastic colon and internal hemorrhoids.  AR 153.

28 \\

**United States District Court**
For the Northern District of California

1    Finally, on January 13, 2004, plaintiff's treating

2    physician Josephine Mak, MD, completed a Medical Assessment of

3    Ability to Do Work-Related Activities (Physical).  AR 163-66.  The

4    record contains numerous clinic treatment notes reflecting

5    plaintiff's regular visits to Dr Mak in 2002 and 2003 for complaints

6    including headaches, backaches and abdominal pains.  AR 125-30; 144-

7    51.  Dr Mak's medical assessment stated that plaintiff had a "bone

8    spur" that caused pain when plaintiff walked or stood.  She checked

9    boxes indicating that plaintiff could tolerate less than one hour of

10   walking/standing and less than one hour of sitting, that he could

11   lift and carry less than five pounds frequently (her handwritten

12   note stated "after carry 3 lbs pt feels back/[illegible]"), was

13   partially restricted from climbing stairs, was restricted in

14   bending, required rest periods during the day, and could not work

15   full-time due to headaches and backaches, and did not possess the

16   residual functional capacity (RFC) even for sedentary work.

17   Plaintiff's application was denied initially and upon

18   reconsideration.  AR 24-34.  He submitted a timely request for a

19   hearing before an Administrative Law Judge (ALJ).  AR 35.

20   On January 27, 2004, The ALJ opened the hearing with

21   plaintiff, his attorney, an interpreter, medical expert (ME) Sergio

22   Bella, MD, and vocational expert (VE) Gerald D Belchik, PhD,

23   present.  AR 167-211.  Plaintiff testified that he had "constant"

24   pain in his back whenever he moved that became less severe when he

25   remained stationary, AR 178, headache and dizziness, AR 181, stomach

26   and/or abdominal pain, AR 183, 186, and frequent feelings of

27   fullness in his bowels, AR 185-86.

28   \\

5

United States District Court

For the Northern District of California

1    Dr Bella testified that while further testing could have

2  been conducted regarding plaintiff's back condition, the medical

3  evidence in the record "doesn't indicate anything" and contained

4  "no objective information" in support of plaintiff's claim of

5  disability.  AR 198.  "The abdominal pain," he testified further,

6  "while kind of tricky, I also believe is [] a mild condition."  AR

7  198-99.  He opined that the gastritis (presumably caused by

8  helicobacter) had likely resolved with antibiotics, AR 199, and

9  that plaintiff's bowel symptoms could be managed through behavior

10  modification and, possibly, nutrition changes and were "a very

11  treatable problem."  AR 199-200.  Dr Bella responded to questioning

12  from plaintiff's attorney about whether his stated opinion that

13  plaintiff's impairments were "non-severe" was intended to have the

14  same meaning as in the legal context for social security cases.  AR

15  200-01.  The ALJ then posed the following question: "Non-severe

16  impairments are, by regulation, defined as an impairment or

17  combination of impairments is not severe if it does not

18  significantly limit your physical or mental ability to do basic

19  work activities.  Does that capsulate what you're undertaking to

20  say?" to which the ME answered, "Thank you, yes."  AR 201.

21    The VE testified that based on plaintiff's lack of work

22  experience and education, with non-severe impairments he could

23  perform "numerous jobs" including "assembler" and "production

24  packing and packaging," both of which could be performed at the

25  sedentary, light and medium exertional levels.  AR 206-07.

26  Plaintiff's attorney then elicited from the VE testimony that:  an

27  individual who could not sit for more than thirty minutes could not

28  perform sedentary work; that there are no light work jobs "that

6

United States District Court

For the Northern District of California

1   don't require some body movement"; and that taking ten to fifteen

2   unscheduled breaks per month would be inconsistent with maintaining

3   employment.  AR 208-09.

4           On February 3, 2004, the ALJ issued a decision finding

5   plaintiff not disabled because he had no severe impairments.  AR

6   11-16.  Applying the five-step sequential disability analysis set

7   forth at 20 CFR § 416.920 (<u>infra</u>), the ALJ found that plaintiff had

8   engaged in no substantial gainful activity since the alleged onset

9   date (step one) and that he had no severe impairment or combination

10  of impairments — that is, that "significantly limits an

11  individual's physical or mental ability to do basic work

12  activities" (step two).  AR 12.  Having found no severe impairment,

13  the ALJ found plaintiff not disabled.  The decision stated that the

14  medical record provides "no objective evidence that the claimant

15  has significant limits on his physical or mental ability to do

16  basic work activities," and contained a detailed recital of all the

17  medical reports previously mentioned above.  AR 12-14.

18          The ALJ discounted the one medical report — by treating

19  physician Dr Mak — that found him disabled and also discounted

20  plaintiff's own testimony.  Regarding Dr Josephine Mak's RFC

21  assessment, the ALJ commented that there is "no objective medical

22  evidence on which to base these opinions" and that it appeared to

23  be advocacy.  AR 14.  In support of his finding that "claimant's

24  allegations and subjective complaints are not totally credible and

25  not supported by substantial medical evidence," AR 12, the ALJ

26  noted that plaintiff drove his son to school, walked twenty minutes

27  per day and shopped, activities "inconsistent with his testimony

28  that he is only able to stand for 10 minutes at a time."  AR 14.

7

United States District Court

For the Northern District of California

1    The Appeals Council declined review, making the ALJ's

2  decision final.  AR 4-6.  Plaintiff timely requested judicial

3  review.

4

5                                    II

6    In appealing the SSA's final decision, plaintiff contends

7  the ALJ erred in discounting his own testimony and Dr Mak's

8  assessment and contends that the ALJ failed to assess his

9  impairments alone or in combination, failed to assess his

10  subjective complaints of pain properly and improperly rejected the

11  testimony of the VE.  The court disagrees with these contentions.

12  On the contrary, the ALJ applied the SSA's regulations governing

13  disability determinations correctly.  Because his conclusions are

14  supported by substantial evidence, the court affirms his decision.

15    The court's jurisdiction is limited to determining

16  whether the SSA's denial of benefits is supported by substantial

17  evidence in the administrative record.  42 USC § 405(g).  A

18  district court may overturn a decision to deny benefits only if the

19  decision is not supported by substantial evidence or if the

20  decision is based on legal error.  See Andrews v Shalala, 53 F3d

21  1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750

22  (9th Cir 1989).  The Ninth Circuit defines "substantial evidence"

23  as "more than a mere scintilla but less than a preponderance; it is

24  such relevant evidence as a reasonable mind might accept as

25  adequate to support a conclusion."  Andrews, 53 F3d at 1039.

26    The SSA's regulations specify in detail how an ALJ is to

27  approach the task of determining whether a claimant is disabled.

28  20 CFR § 416.920 sets forth a five-step sequential analysis for

8

**United States District Court**
For the Northern District of California

1  ALJs to use in evaluating claims of disability: (1) first, the ALJ

2  considers whether the claimant is currently employed in substantial

3  gainful activity; (2) if not, the second step asks whether the

4  claimant has a severe impairment; (3) in step three, the ALJ

5  determines whether the claimant has a condition which meets or

6  equals any listed condition according to the criteria set forth in

7  the Listings of Impairments in Appendix 1, Subpart P of Part 404;

8  (4) if the claimant does not have such a condition, step four asks

9  whether the claimant can perform his past relevant work; (5) if

10  not, in step five the ALJ considers whether the claimant has the

11  ability to perform other work which exists in substantial numbers

12  in the national economy.  20 CFR § 416.960(c).  The ALJ's analysis

13  of plaintiff's disability stopped at step two with a determination

14  that he has no severe impairment or combination of impairments.

15       In addition, the regulations cover in detail how

16  different types of evidence are to be weighed against each other.

17  Several provisions are directly on point in this case.  20 CFR §

18  416.929(b), entitled "how we evaluate symptoms, including pain,"

19  effectively disposes of plaintiff's challenges to the ALJ's

20  handling of his pain testimony:

21       Your symptoms, such as pain * * * will not be found
         to affect your ability to do basic work activities
22       unless medical signs or laboratory finding show
         what a medically determinable impairment(s) is
23       present.  Medical signs and laboratory findings,
         established by medically acceptable clinical or
24       laboratory diagnostic techniques, must show the
         existence of a medical impairment(s) which results
25       from anatomical [or] physiological * * *
         abnormalities and which would reasonably be
26       expected to produce the pain or other symptoms
         alleged.
27

28  Substantial evidence in the record supports the ALJ's conclusion

United States District Court

For the Northern District of California

1   that the required medical signs and laboratory findings that would

2   require him to give credence to plaintiff's pain testimony are

3   absent.  The ME observed that other tests were available to assess

4   plaintiff's back, but that the evidence in the record showed only

5   "minimal" changes.  AR 198, 202-03.  The clear thrust of the ME's

6   testimony was that the changes noted on plaintiff's x-ray could not

7   "reasonably be expected to produce the pain or other symptoms

8   alleged."

9        20 CFR § 416.927(d), in the regulation entitled

10  "evaluating opinion evidence," covers "how we weigh medical

11  opinions."  It explains that the ALJ evaluates every medical

12  opinion and generally gives more weight to treating sources.  A

13  treating physician's opinion is given "controlling weight" only if

14  "well-supported by medically acceptable clinical and laboratory

15  diagnostic techniques and not inconsistent with the other

16  substantial evidence" in the record.  In this case, the ALJ

17  properly gave controlling weight to the opinion of Dr Wong, but did

18  not do so with the opinion of Dr Mak.  If an ALJ does not give

19  controlling weight to a treating source, he must consider other

20  factors, including length of the treatment relationship and

21  frequency of examination, nature and extent of the treatment

22  relationship, supportability, consistency, specialization and other

23  factors.  § 416.927(d)(2)-(6).  Regarding supportability, the

24  regulation provides: "[t]he more a medical source presents relevant

25  evidence to support an opinion, particularly medical signs and

26  laboratory findings, the more weight we will give that opinion."

27  § 416.927(d)(3).  This disposes of plaintiff's challenge to the

28  ALJ's decision to discount the opinion of Dr Mak, as her opinion

10

**United States District Court**
For the Northern District of California

1 was not supported by medical signs and laboratory findings and was

2 contrary to substantial other evidence in the record.  Moreover,

3 "[a] physician's opinion of disability 'premised to a large extent

4 upon the claimant's own accounts of his symptoms and limitations'

5 may be disregarded where those complaints have been 'properly

6 discounted.'" <u>Morgan v Comm'r of Soc Sec Admin</u>, 169 F3d 595, 602

7 (9th Cir 1999), quoting <u>Fair v Bowen</u>, 885 F2d 597, 603 (9th Cir

8 1989).  The ALJ is responsible for resolving conflicts in medical

9 testimony and resolving ambiguity.  <u>Morgan</u>, 169 F3d at 603.

10        The ALJ's decision specifies in detail the weight he gave

11 to the testimony or opinion of each witness or opining medical

12 doctor.  The ALJ's weighing of the evidence is well-supported by

13 substantial evidence in the record.  The ALJ's failure to discuss

14 the VE's testimony was not error because substantial evidence

15 supported his determinations that plaintiff did not have any severe

16 impairment or combination of impairments and was not disabled.

17        The clerk is directed to enter judgment in favor of

18 defendant and against plaintiff.  The clerk is further directed to

19 close the file and terminate all pending motions.

20

21        IT IS SO ORDERED.

22

23 _____

24 **VAUGHN R WALKER**
**United States District Chief Judge**

25

26

27

28

11